Francis M. Ferrari, Plaintiff, *v.* First National Bank of Connellsville, Penn., Defendant.

Supreme Court, New York County, May 20, 1926.

Banks and banking — action against drawer of checks on Rome bank, payment on which was refused — defendant issued checks but instead of placing funds with Rome bank to cover them, sum of money was paid to New York banking house — said banking house notified Rome bank to pay checks on presentment — banking house adjudicated bankrupt — trustee withdrew deposit in Rome bank prior to presentment of checks — action of said trustee constitutes withdrawal of funds by drawer.

The defendant, a bank which issued four checks drawn on an Italian bank in Rome, with the direction that the bank pay " from balance " against the checks, which were not presented for payment until after the lapse of a reasonable time when payment was refused for lack of funds, is liable to plaintiff in an action on said checks, where it appears that instead of placing the funds with the Rome bank to cover the checks, defendant paid a sum of money to a New York banking house which, in turn, notified the Rome bank to pay the checks upon presentation, but that, prior to the presentment of the checks, the banking house was adjudicated a bankrupt and its entire balance in the Rome bank was withdrawn by the trustee in bankruptcy, since the action of said trustee was in reality a withdrawal of funds by the drawer bank, for which it is liable.

Action on checks brought against drawer.

*Foster, La Guardia & Cutler* [*A. S. Cutler* of counsel], for the plaintiff.

*Garrett A. Brownback* [*J. B. Doyle* of counsel], for the defendant.

Proskauer, J. On September 5, 1922, the defendant issued four checks, respectively, for 9,000, 10,000, 10,000 and 9,000 lire, drawn on the Banca Commerciale Italiana, of Rome, Italy, and directing that bank to " pay from balance against this check." The checks were not presented for payment until after the lapse of a reasonable time; payment was refused for lack of funds. The defendant bank did not place funds directly with the bank in Rome with which to meet these checks. It paid a sum of money to the firm of Knauth, Nachod & Kuhne in New York city and that firm notified the Rome bank to pay these checks upon presentation and debit the account of Knauth, Nachod & Kuhne with the amount of the checks when paid. Knauth, Nachod & Kuhne had a sufficient balance with the bank in Rome to meet the checks. They never directed, however, the appropriation of any of their deposit to the checks in advance of presentment. They were subsequently adjudicated bankrupt and their entire balance was withdrawn from the Rome

bank by the trustee in bankruptcy prior to the presentment of the checks.

· Delay in presentment of a check discharges the drawer only " to the extent of the loss caused by the delay." (Neg. Inst. Law, § 322.) The question here is whether the defendant has in a legal sense suffered damage by reason of the delay. The answer to that question depends upon the obligation of the drawer.

In *Hibernia Nat. Bank* v. *Lacombe* (84 N. Y. 367, 379) DAN-FORTH, J., thus states the duty of the drawer: " In substance, the drawer undertakes that there shall be paid to the holders of the check the sum of money therein mentioned at the place named. These things are of the essence of the contract, and unless performed the object of the payee is defeated. * * * The check is evidence of the contract, and under the general law is the contract itself. In view of this the parties have contracted. The drawer undertakes that the drawee shall be found in the place where he is described to be, and shall have effects in his hands, and from these, or upon other consideration (good as between him and the drawer, and with which the payee has nothing to do), pay the check. He undertakes, therefore, that it shall be paid when presented, and although the drawee is designated to make the payment, he, as between the payee and drawer, is only an instrument of the drawer, and the latter, therefore, since he undertakes for his agent's act, ' undertakes that it shall be done at all events.' (*Mellish* v. *Simeon*, 2 H. Bla. 378.) "

Again, in *Baldwin's Bank* v. *Smith* (215 N. Y. 76, 80) MILLER, J., says: " The reason for exonerating the drawer of a check in case of loss resulting from a failure to present it in a reasonable time is that the drawing of a check is virtually an appropriation, though not an assignment, *pro tanto* of the drawer's funds in the bank. [*Little* v. *Phenix Bank*, 2 Hill, 425, 428.] It is incumbent on the holder of the paper to secure payment, and loss resulting from his neglect should fall upon him, not on the drawer, *who has no further duty to perform.*" (Italics mine.)

If the drawer has performed this obligation, and loss ensues, as where the drawee becomes insolvent prior to the presentment or the money deposited with the drawee to meet the check depreciates, then the drawer is discharged. The holder of the check by his delay in presentment takes the risk of the failure of the drawee bank, provided the drawer has performed his obligation. But he does not take the risk of the failure of an intermediary chosen by the defendant as its agent for the purpose of supplying the drawee with funds. The payee " has nothing to do " with the means chosen by the drawer to pay the check. (*Hibernia Nat. Bank* v. *Lacombe, supra.*)

Assuming, moreover, that an arrangement by the drawer to have the checks honored against the balance of a third party constitutes a performance by the drawer of his obligation to have effects in the hands of the drawee, that obligation was a continuing one.

In *First Nat. Bank* v. *Linn Co. Bank* (30 Oreg. 296; 47 Pac. 614) it is stated: "A check purports to be made upon a deposit to meet it, and presupposes funds of the drawer in the hands of the drawee. But if the drawer has no such funds at the time of drawing his check, or subsequently withdraws them, he commits a fraud upon the payee, and can suffer no loss or damage from the holder's delay in respect to presentment or notice. In such case he is liable, and cannot insist upon a formal demand or notice of non-payment."

In Parsons on Notes & Bills (Vol. 2 [2d ed.], 72), it is stated: " If a check be presented long after date, and is refused payment, not on account of a failure, but because the drawer has closed his account or withdrawn his funds, the drawer is still liable."

What really happened here was the exact equivalent of a withdrawal of funds by the drawer. If it were assumed in the drawer's favor that the arrangement with Knauth, Nachod & Kuhne was the equivalent of a deposit of funds to meet the checks, these funds were withdrawn by the legal representative of the agent through whom the drawer made this equivalent of a deposit.

In arriving at this conclusion I have given no weight whatever to the alleged oral agreement that there might be delay in presentment. Verdict directed for plaintiff in the sum of $1,672, with interest from April 2, 1924.