421 F.2d 1243
 Michael N. SHERBY, a minor by his mother and next friend, Yvonne M. Sherby, and Yvonne M. Sherby, in her own right, Appellants,
v.
WEATHER BROTHERS TRANSFER COMPANY, Inc., Appellee.
 No. 13413.
 United States Court of Appeals, Fourth Circuit.
 Argued January 9, 1970.
 Decided February 20, 1970.
 
 Robert C. Verderaime and Stanley Levine, Baltimore, Md. (Paul Berman, Verderaime & DuBois, Baltimore, Md., A Freeborn Brown and T. Carroll Brown, Belair, Md., on brief) for appellants.
 Edward C. Mackie, Baltimore, Md. (Rollins, Smalkin, Weston & Andrew, Baltimore, Md., on brief) for appellee.
 Before HAYNSWORTH, Chief Judge, and BOREMAN and BUTZNER, Circuit Judges.
 BOREMAN, Circuit Judge:
 
 
 1
 Plaintiffs appeal from the dismissal of their amended complaint upon motion of the defendant, Weather Brothers Transfer Company, Inc.
 
 
 2
 On July 16, 1966, Michael Sherby, a minor, was riding as a passenger in a tractor trailer unit owned by defendant, Weather Brothers Transfer Company, Inc., and operated by Michael's father in the scope of the father's employment. Michael was injured when the tractor trailer unit collided in Maryland with another motor vehicle. Plaintiffs filed a complaint against Weather Brothers, seeking to recover damages based upon the negligence of the father, defendant's employee, while acting within the scope of his employment. Following Weather Brothers' motion to dismiss the original complaint, plaintiffs filed an amended complaint adding Eastern Greyhound Lines and Greyhound Lines, Inc., as additional defendants. Weather Brothers moved to dismiss the amended complaint, which motion was granted on the ground that, under Maryland law, a minor may not sue his father's corporate employer in tort to recover for injuries sustained as a result of the negligence of the father in the course of his employment.
 
 
 3
 Since this action is based upon negligence in the operation of a vehicle upon a public highway in Maryland, the federal court will be governed by the law of that state. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In the absence of a state statute or a controlling decision directly in point a federal court will attempt to determine what the highest state court would hold if confronted with the same issue. Tavernier v. Weyerhaeuser Company, 309 F.2d 87, 91 A.L.R.2d 1268 (9 Cir. 1962); In Re Roosevelt Lanes, Inc., 234 F.Supp. 842 (E.D.N.Y.1964). Considered dicta in the opinions of the highest state court should not be ignored; and dictum which is a clear exposition of the law must be followed unless in conflict with other decisions of that court. Hartford Acc. & I. Co. v. First Nat. B. & T. Co. of Tulsa, Okl., 287 F.2d 69 (10 Cir. 1961); Jess Edwards, Inc. v. Goergen, 256 F.2d 542 (10 Cir. 1958).
 
 
 4
 The district court, looking to dicta in decisions of the Court of Appeals of Maryland, held that this action could not lawfully be maintained against Weather Brothers in Maryland. We affirm.
 
 
 5
 In Schneider v. Schneider, 160 Md. 18, 21-22, 152 A. 498, 72 A.L.R. 449 (1930), the Maryland court in denying recovery of damages to a mother for injuries sustained by her while riding in a vehicle owned by one son and operated by another indicated that it would not allow a suit by a child against his parent, as the court said:
 
 
 6
 "The obstacle to the mother's recovery against James Schneider [her son] is in the fact that she sues a minor son, of whom she, jointly with the father, is the natural guardian. * * * The ordinary position of parent and guardian of a minor, and that of plaintiff seeking to recover from the minor, are positions which cannot both be occupied by one person at one and the same time. Maintenance of the suit is inconsistent with the parent's status or office, and the dependence of the minor upon her, and also with the dependence of the law upon her for the fulfilment of necessary legal and social functions. A right of action at law is not one open to any and all persons against any others, without reference to relationships which may exist between them. This court has decided that a wife cannot sue her husband for damages sustained in an automobile accident * * It appears that a majority of courts in which the question has arisen have decided that a minor child cannot maintain such an action against its parent — a question differing somewhat from the one now decided." (Emphasis added.)
 
 
 7
 Villaret v. Villaret, 83 U.S.App.D.C. 311, 169 F.2d 677 (1948), involved the question whether an unemancipated minor child may sue his parent for a tortious act. In applying Maryland law, the court cited Schneider as authority and stated at p. 678:
 
 
 8
 "As the Maryland court thus holds that a mother may not sue her infant son for injuries caused by his negligent operation of an automobile in which she was a passenger, it would be illogical to suppose its holding would be different were it confronted with the converse of the situation. Indeed, the seeming approval with which the Court of Appeals of Maryland referred, in the language just quoted, to the established principle that a minor child cannot maintain a tort action against a parent, clearly indicates that, upon occasion, the general rule would be adopted." (Emphasis added.)
 
 
 9
 In Mahnke v. Moore, 197 Md. 61, 77 A.2d 923 (1951), the court again recognized the rule of parental immunity, but carved out a narrow exception that when a parent is guilty of acts which show complete abandonment of the parental relation, e. g., where the father murdered the mother in the presence of the child and committed suicide one week later, also in the child's presence, the rule of immunity does not apply. The court said, at p. 68, 77 A.2d at p. 926:
 
 
 10
 "It is conceded, of course, that parental authority should be maintained. It is also conceded that a child should forego any recovery of damages if such recovery would unduly impair discipline and destroy the harmony of the family. Ordinarily, the parent is not liable for damages to the child for a failure to perform a parental duty, or for excessive punishment of the child not maliciously inflicted, or for negligent disrepair of the home provided by the father. These acts grow out of and pertain to the relation of parent and child. But when, as in this case, the parent is guilty of acts which show complete abandonment of the parental relation, the rule giving him immunity from suit by the child, on the ground that discipline should be maintained in the home, cannot logically be applied, for when he is guilty of such acts he forfeits his parental authority and privileges, including his immunity from suit." The district court for the District of Maryland, in Zaccari v. United States, 130 F.Supp. 50, 53 (D.Md.1955), stated:
 
 
 11
 "I conclude, as did the Court of Appeals for the District of Columbia in Villaret v. Villaret, supra, that under the Maryland law an infant cannot sue her parent for injuries sustained in an automobile accident."
 
 
 12
 Finally, in Dennis v. Walker, 284 F.Supp. 413 (D.D.C.1968), although the court did not apply Maryland law, it did discuss the development of the parental immunity doctrine in Maryland. At page 416 the court said:
 
 
 13
 "It is interesting to observe * * * that previously the Court of Appeals for the District of Columbia was confronted with this question under the law of Maryland, * * *. On a thorough review of the law of that State on cognate topics, the Court * * * reached the conclusion that the law of Maryland would adopt the rule of parental immunity and would not permit a minor child to maintain an action against a parent for damages for personal injuries caused by the parent's negligence. This decision proved to be prophetic. Subsequently, in Mahnke v. Moore, [citation omitted] the Court of Appeals of Maryland reached that conclusion and formally adopted the doctrine, that a parent is not liable to damages to a child for a failure to perform a parental duty."
 
 
 14
 Plaintiffs argue that these cases holding that a child cannot maintain an action against its own parent does not bar the child's action against the parent's employer based upon the parent's negligence because the employer is "one step removed" from the close family circle and recovery against the employer would not result in interference with the family relationship. This argument has been rejected by the Court of Appeals of Maryland in cases involving suits by a wife against her husband's employer based upon the husband's negligence. In Riegger v. Bruton Brewing Company, 178 Md. 518, 523, 16 A.2d 99, 131 A.L.R. 307 (1940), Maryland's highest court stated:
 
 
 15
 "* * * [I]t would seem illogical to hold that the husband's employer is liable to appellant under the circumstances shown by the declaration, for no right of action is permitted by the wife against her husband, and the wife's right of action against appellee must arise solely because of the negligence of its agent (in this case her husband) acting within the scope of his employment. To hold that the employer is liable because of the acts of its agent against whom no liability exists in favor of the person injured would result in holding appellee liable notwithstanding her inability to have legal redress against the person causing her injuries. Such a holding would, in our opinion, be entirely inconsistent with the rule in Maryland to the extent that it has been declared by our previous decisions, and the result would be to permit the wife to do indirectly what admittedly she may not do directly."
 
 
 16
 This holding in Riegger was quoted with approval in Stokes v. Association of Independant Taxi Operators, Inc., 248 Md. 690, 237 A.2d 762 (1968).
 
 
 17
 We conclude that the Court of Appeals of Maryland would follow the same line of reasoning as in Riegger and hold that a minor child cannot recover from his father's employer in an action based upon the father's negligence while acting within the scope of his employment. A contrary holding would permit a plaintiff (here the minor child) to accomplish indirectly that which he may not do directly, a result rejected in Riegger and Stokes.
 
 
 18
 It is argued by plaintiffs that the general trend is toward liberalization and that a growing number of courts now permit a suit by a child directly against the father for a tort of the father committed against the child. Consequently, the argument goes, there is no logical reason to deny a child the right to sue the father's employer for injuries incurred by reason of the father's negligence while engaged in his regular employment and within its scope.
 
 
 19
 This argument failed to persuade the district court and we decline to follow and apply it here in the face of the apparent leaning of the highest court of Maryland toward a contrary view.
 
 
 20
 Affirmed.
 
 BUTZNER, Circuit Judge (dissenting):
 
 21
 Dicta and the analogy to husband and wife do not persuade me that Maryland would deny this youth recovery against his father's employer. Riegger v. Bruton Brewing Co., 178 Md. 518, 16 A.2d 99 (1940), the case most closely related to the issue before us, dealt with two principles of law which are not applicable here. In Riegger the court held a wife could not sue her husband's employer for injuries resulting from her husband's negligence because (1) at common law a wife could not maintain an action against her husband for a personal tort; and (2) if the suit were maintained against the employer, the employer in turn would have a cause of action against the husband, thus permitting the wife to do indirectly what she could not do directly. But the common law did not forbid a child from suing his parent for a personal tort. Mahnke v. Moore, 197 Md. 61, 77 A.2d 923, 924 (1951); Dunlap v. Dunlap, 84 N.H. 352, 150 A. 905, 906, 71 A.L.R. 1055 (1930). And not until late in the last century did an American court first apply the defense of parental immunity. E. g., Hewellette v. George, 68 Miss. 703, 9 So. 885, 13 L.R.A. 682 (1891); see Prosser, Law of Torts 886 (3d ed. 1964).
 
 
 22
 The second point of distinction between Riegger and the case before us is perhaps of less theoretical significance, but it has a practical aspect which should not be overlooked. Here, if the child were allowed to recover, the employer would have no meaningful cause of action against the father, for the same policy of liability insurance that protected the employer also protected its employee, the father. Therefore, this suit would not disrupt the peace and tranquillity of the family by permitting an indirect action against the father.
 
 
 23
 True, Maryland will not permit a child to maintain a suit in equity, apart from statute, for support and maintenance. Yost v. Yost, 172 Md. 128, 190 A. 753 (1937). But there the court was careful to point out that the basis of the suit was "nonfeasance as to the performance of moral duties of support" which "as distinguished from overt acts of tort, grow out of and pertain to the relation of parent and child." "Stated differently," the court continued, "for acts of passive negligence incident to the parental relation, there is no liability." [190 A. at 756]. In contrast, the Maryland Court of Appeals has sanctioned a child's suit against a parent's executor for personal injuries caused by the parent's intentional "atrocious" tort. Mahnke v. Moore, 197 Md. 61, 77 A.2d 923 (1951).
 
 
 24
 Here, the tort for which the child sues was not "atrocious" as in Mahnke, but neither was it simply "nonfeasance" or "passive negligence incident to the parental relation" as in Yost. The father's negligent operation of his employer's truck lies between these extremes, but it does not directly involve the duties of discipline and care which undergird the doctrine of parental immunity. Under similar circumstances the child would be allowed recovery in most of the states whose courts have considered the problem, see Annot., 1 A.L.R.3d 677, 702 (1965), and the majority view has persuasive support, see Prosser, Law of Torts 885 (3d ed. 1964).
 
 
 25
 Compensation of innocent victims of negligent motorists is so essential to the state and its citizens that the Maryland legislature has enacted financial responsibility laws and established an unsatisfied claim and judgment fund. Md. Ann.Code art. 66½ §§ 116-179 (1967). The public policy, which this legislation illustrates, coupled with precedent of the Maryland Court of Appeals disavowing rigid adherence to the defense of parental immunity leads me to conclude that Maryland law would allow this cause of action to be maintained.